UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSE FRANCO,

          Plaintiff,

    v.

E-3 SYSTEMS,

          Defendant.

Case No. 19-cv-01453-HSG

**ORDER GRANTING MOTION FOR FINAL SETTLEMENT APPROVAL AND MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE AWARD**

Re: Dkt. Nos. 61, 62

      Pending before the Court is the unopposed motion for final approval of class action settlement filed by Plaintiff Jose Franco. Dkt. No. 62 ("Mot."). Also pending is Plaintiff's unopposed motion for attorneys' fees, costs, and class representative enhancement. Dkt. No. 61 ("Fees Mot."). On January 29, 2021, the Court granted Plaintiff's motion for preliminary approval of class settlement. Dkt. No. 58. On May 27, 2021, the Court held a final approval hearing. On June 3, 2021, Plaintiff provided the supplemental briefing directed by the Court, detailing the extent of his involvement with the litigation. Dkt. No. 66. For the reasons set forth below, the Court **GRANTS** Plaintiff's motion for final approval and motion for fees, costs, and class representative enhancement.

## I.    BACKGROUND

### A.    Procedural Background

      Defendant E-3 Systems is a California corporation with its headquarters in Union City, California that provides installations of network and telecom infrastructures. Dkt. No. 1, Ex. A ("Compl.") ¶ 5. Plaintiff worked as a telecommunications technician, a non-exempt hourly position, for Defendant from August 18, 2014 to May 15, 2018. Dkt. No. 9-1, Ex. B, Declaration of Albert Gonzales ¶ 3.

On February 14, 2019, Plaintiff filed this putative labor class action alleging nine causes of action against Defendant for (1) Failure to Pay Minimum Wages; (2) Failure to Pay Wages and Overtime under Labor Code § 510; (3) Meal Period Liability under Labor Code § 226.7; (4) Rest-Break Liability under Labor Code § 226.7; (5) Violation of Labor Code §226; (6) Failure to Reimburse Necessary Expenditures under of Labor Code §2802; (7) Violation of Labor Code §221; (8) Violation of Labor Code § 203 and (9) Violation of Business & Professions Code § 17200 et seq. Compl. ¶¶ 34–75.

On March 20, 2019, Defendant removed the class action lawsuit from Alameda Superior Court to the United States District Court for the Northern District of California. Dkt. No. 1.

On April 23, 2019, Plaintiff filed a Complaint for Penalties Pursuant to Labor Code § 2699, *et seq.* under California's Private Attorneys General Act of 2004 ("PAGA") in Alameda County Superior Court. Mot. at 2. On May 23, 2019, Defendant removed the PAGA action from Alameda Superior Court to United States District Court. *Id.* at 3.

On May 21, 2019, Plaintiff filed a Motion for Remand in the Class Action. *Id.* On June 17, 2019, Plaintiff filed a Motion for Remand in the PAGA Action. *Id.* On November 8, 2019, the Court denied Plaintiff's motions for remand. Dkt. No. 29.

On January 15, 2020, the Court granted the parties' stipulation to consolidate the class action and PAGA action. Dkt. No. 46.

On August 24, 2020, the parties completed mediation with wage-and-hour mediator Mark C. Peters. Mot. at 3. After a full day of negotiations based on the documents and information exchanged, the parties agreed in principle to the terms governing the settlement of this action and all of Plaintiff's class and representative claims in it. *Id.* The parties then began working on completing their long form Settlement Agreement, which they presented to the Court for preliminary approval. *Id.*

On November 5, 2020, Plaintiff filed a Motion for Preliminary Approval of the parties' settlement. Dkt. No. 52.

On January 21, 2021, the parties' counsel appeared for the preliminary approval hearing. The Court approved Plaintiff's motion for Preliminary Approval on January 29, 2021. Dkt. No.

58.

On February 8, 2021, the Claims Administrator received the class data file from Defendant Counsel.  Mot. at 3.  On April 14, 2021, the Claims Administrator mailed the Class Notice, via U.S. First Class Mail, to 81 class members.  *Id.*  On April 14, 2021, the deadline to object or opt out of the Settlement passed.  *Id.*

On March 15, 2021, Plaintiff filed a motion for Award of Attorneys' Fees and Costs and Class Representative Enhancement.  Dkt. No. 61.

On April 29, 2021, Plaintiff file a motion for final approval of class settlement.  Dkt. No. 62.

**B.     Settlement Agreement**

Following extensive formal discovery and with the assistance of a mediator, the parties entered into a settlement agreement on October 7, 2020.  Dkt. No. 62-2 ("SA").  The key terms are as follows:

**i.     Value of the Settlement to the Class**

Defendant has agreed to pay a Gross Settlement Amount of $125,000.00.  SA, § I.  The individual settlement amount to the approximately 81 Class Members will pay them a total of around $59,584.22, (i.e., $125,000.00 minus the proposed Class Representative service enhancement  award ($5,000.00), the proposed Class Counsel Award (up to $41,666.67), reasonable anticipated litigated costs/expenses ($10,000.00), the anticipated Settlement Administration Costs ($4,999.11), and the PAGA Payment ($5,000.00)), with an average payment of approximately $735.61 per employee.  Mot. at 4; Dkt. No. 62-5 ¶ 13.

**ii.     Size of the Class and the Class Definition**

For purposes of the Settlement, the Parties requested that the Court conditionally certify the proposed Settlement Class, which includes all current and former non-exempt employees of E-3 Systems during the Class Period of February 13, 2015 to October 23, 2020.  Dkt. No. 52 at 9; SA § 1.  Defendant estimated during the mediation that the class includes approximately 81 Settlement Class Members.  Dkt. No. 52 at 9.

**iii.     Nature of the Payments and Notice, Exclusion, Objection Periods**

This is a common fund settlement with no reversion, and every Settlement Class Member

will receive an individual settlement payment. *Id.* at 10.

The notice procedure provided that Class Members shall have 45 calendar days from the date of mailing of the Settlement Documents to return a valid request for exclusion from the Settlement (the "Opt-Outs") to the Settlement Administrator. *Id.* Settlement Class members who wish to submit Opt-Outs and be excluded from the Settlement Class must submit a written Opt-Out. *Id.* Class Members who do not return timely and valid Opt-Outs from the Settlement shall be bound by the terms of the Settlement. *Id.* Those Settlement Class Members who do not submit Opt-Outs will receive their individual settlement amount from the Net Fund Value pursuant to the Settlement as calculated by the Settlement Administrator. *Id.*

Only those Settlement Class members who do not submit Opt-Outs may object to the Settlement, which also includes a request for attorney' fees and costs. *Id.* All objections must be postmarked no later than 45 calendar days after the mailing of the Class Notice. *Id.*

### iv. The Released Claims and Released Parties

The "Released Claims" are defined as:

> The Settlement Class Released Claims include any and all claims, rights, demands, liabilities, penalties, wages, and causes of action, arising from, or related to, or that were pled, or that could have been pled, based on the facts and allegations in the operative Complaint in the Action during the Class Period, including for alleged violation of Labor Code sections 201, 202, 203, 204, 210, 221,226, 226.7, 510, 512, 558, 558.1, 1174, 1174.5, 1182.12, 1185, 1194, 1194.2, 1197, 1198, 1199, 2698, 2699, et seq. and 2802, or any claims based on the following allegations under any theory: failure to pay minimum, regular, or hourly wages, and/or alleged off-the-clock work; failure to pay overtime wages or accurate overtime wages; failure to pay timely wages during employment or upon separation; failure to provide accurate and/or complete wage statements; failure to maintain records; PAGA, failure to provide rest breaks or meal periods; or violation of Cal. Bus. & Prof. Code section 17200 et seq. by engaging in the foregoing conduct. Settlement Class Members" Released Claims include all claims for unpaid wages, overtime wages, statutory penalties, damages of any kind, interest, attorneys" fees, costs, injunctive relief, restitution, and any other equitable relief under California statute, ordinance, regulation, common law, or other source of law, including but not limited to the California Labor Code, California Business and Professions Code, and California Civil Code, and California Industrial Welfare Commission Wage Orders.

SA § 1.

The "Released Parties" are "Defendant and its past or present officers, directors,

shareholder, employees, agents, principals, heirs, representatives, accountants, auditors, attorneys, consultants, insurers, and their respective successors and predecessors in interest, assigns, subsidiaries, affiliates, and parents, if any. *Id.*

### v. Attorneys' Fees, Costs, Enhancement, Administration, PAGA

The Gross Settlement Amount of $125,000.00 covers all settlement payments to Settlement Class Members, all attorney' fees, all litigation costs, all Settlement Administration Expenses, all applicable taxes (but not Defendant's share of said taxes), all payments to California's Labor and Workforce Development Agency ("LWDA"), interest, and the Service Enhancement to the Class Representative. Mot. at 4.

From the Gross Settlement Amount, Class Counsel may seek approval from the Court of a maximum of $41,666.67 in attorneys' fees (one-third of the Gross Settlement Amount), and actual reasonable litigation costs, for serving as Class Counsel. *Id.*

From the Gross Settlement Amount, $5,000.00 shall be allocated to PAGA penalties, from which $3,750.00 (75%) shall be payable to the LWDA, representing the LWDA's share of PAGA penalties. *Id.*

The "Settlement Administrator Costs" are those expenses incurred by the Settlement Administrator in order to effectuate the Settlement Agreement, which are estimated at $4,999.11. *Id.*

From the Gross Settlement Amount, the Class Representative may seek approval from the Court of a service enhancement payment not to exceed $5,000.00. *Id.*

### vi. Notice Procedures

As authorized by the Court's order granting preliminary approval, the Parties engaged ILYM Group, Inc. to provide settlement administration services, including mailing the Class Notice approved by the Court. Dkt. No. 62-5 ("Hernandez Final Approval Declaration") ¶ 3. The Class Notice summarized the settlement terms, provided Class Members with an estimate of how much they would be paid if the Settlement received final approval, and advised Class Members how to submit Requests for Exclusion or object to the Settlement. Mot. at 5.

No Class Members have expressed their intention to object to the Settlement, or disputed

5

their individual settlement payment. *Id.* As of April 22, 2021, the Claims Administrator reported no requests for exclusion from the Settlement. Hernandez Final Approval Decl. ¶ 10. The deadline to request exclusion from the Settlement was April 14, 2021. *Id.* ¶ 10. ILYM reports that a total of 81 Class Members will participate in the Settlement, representing a 100% participation rate. *Id.* ¶ 12.

### vii. Tax Consequences and Allocations and Uncashed Checks, *Cy Pres*

Under the terms of the Settlement Agreement, all settlement payments to the individual Settlement Class Members shall be allocated as follows: twenty percent (20%) to wages, as to which IRS Forms W-2 will issue and from which employment taxes and withholdings shall have been deducted; and eighty percent (80%) to interest, penalties, and liquidated damages as to which IRS Forms 1099 will issue to the Settlement Class Members. SA § IV (B). Any of the individual settlement payments that are not cashed after the check expiration will be distributed to Civicorps, a local job-training organization in Oakland. SA § IV (E).

## II. LEGAL STANDARD

The plaintiff bears the burden of showing by a preponderance of the evidence that class certification is appropriate under Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). Class certification is a two-step process. First, a plaintiff must establish that each of the four requirements of Rule 23(a) is met: numerosity, commonality, typicality, and adequacy of representation. *Id.* at 349. Second, she must establish that at least one of the bases for certification under Rule 23(b) is met. Where, as here, a plaintiff seeks to certify a class under Rule 23(b)(3), she must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"The criteria for class certification are applied differently in litigation classes and settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) ("*Hyundai II*"). When deciding whether to certify a litigation class, a district court must consider manageability at trial. *Id*. However, this concern is not present in certifying a settlement class.

*Id.* at 556–57.  In deciding whether to certify a settlement class, a district court "must give heightened attention to the definition of the class or subclasses."  *Id.* at 557 (citation omitted).

Where the parties reach a class action settlement prior to class certification, district courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)."  *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (citation omitted).  Such settlement agreements "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair."  *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)).  A more "'exacting review' is warranted 'to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent.'"  *Id.* (citations and quotations omitted).

## III.    DISCUSSION

### A.    Final Approval Of Class Settlement

#### i.    Class Certification

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b).  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–1022 (9th Cir. 1998).  Because no facts that would affect these requirements have changed since the Court preliminarily approved the settlement on January 29, 2021, this order incorporates by reference its prior analysis as set forth in the order granting preliminary approval.  Dkt. No. 58 ("Preliminary Approval Order") at 6-9.

#### ii.    Class Notice

For Rule 23(b)(3) class actions, "the court must direct notice to the class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Individual notice must be sent to all class members "whose names and addresses may be ascertained through reasonable effort."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Here, the parties jointly drafted the Notice of Class Action Settlement, which the Court

1    approved. Preliminary Approval Order at 15-17.  Before mailing the Class Notice, the Claims

2    Administrator verified the addresses produced by Defendant for each Class Member using the

3    National Change of Address Database.  *See* Hernandez Final Approval Decl. ¶ 6.  The Claims

4    Administrator performed a skip trace to ascertain the current addresses of the class members and

5    re-mail notices to Claims Administrator; two notices were re-mailed by ILYM, leaving 2 notices

6    that were undeliverable.  *Id.* at ¶¶ 6-9.  In light of these facts, the Court finds that the parties

7    implemented the previously approved notice plan and provided the best practicable notice to

8    the Class Members.

9           **iii.    Settlement Approval**

10          "The claims, issues, or defenses of a certified class may be settled . . . only with the

11   court's approval."  Fed. R. Civ. P. 23(e).  Approval of a class settlement is appropriate when

12   plaintiffs must overcome significant barriers to make their case.  *Chun-Hoon v. McKee Foods

13   Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).  Additionally, difficulties and risks in litigating

14   weigh in favor of approving a class settlement.  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948,

15   966 (9th Cir. 2009).  "Generally, unless the settlement is clearly inadequate, its acceptance and

16   approval are preferable to lengthy and expensive litigation with uncertain results."  *Ching v.

17   Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014)

18   (quotations omitted)

19          With one exception, no facts have changed that would affect the Court's previous findings

20   in its preliminary approval order; therefore, this order incorporates by reference its prior analysis

21   regarding the (1) the strength of Plaintiffs' case and litigation risk; (2) risk of maintaining class

22   action status; (3) extent of discovery completed and stage of proceedings; and (4) experience and

23   views of counsel.  Preliminary Approval Order at 10-15.

24          The one exception is that class members have now had the opportunity to react to the

25   proposed settlement.  No class members have objected to the settlement or requested exclusion.

26   *See* Dkt. No. 62-5 at 3.  The lack of any objections to or requests for exclusion from the proposed

27   settlement—during the notice period or at the final fairness hearing—supports final approval.  *See*

28   *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004)

("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

After considering and weighing the relevant factors, the Court finds that all the factors favor approval of the settlement. Accordingly, the motion for final approval of the class action settlement is **GRANTED**.

### B. Attorneys' Fees, Costs and Expenses, and Class Representative Enhancement

In its motion, Class Counsel asks the Court to approve an award of $41,666.67 in attorneys' fees, which is one-third of the $125,000 gross settlement amount, and actual reasonable litigation costs, which at present total approximately $7,404.96. Fees Mot. at 1-2. Class Counsel estimates that the litigation costs will be approximately $9,000-$10,000 through final approval. *Id.* Class Counsel also seeks a $5,000 service award for the Named Plaintiff. *Id.* Defendant does not oppose the motion.

#### i. Legal Standard

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Court has discretion in a common fund case to choose either (1) the lodestar method or (2) the percentage-of-the-fund when calculating reasonable attorneys' fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

Under the percentage-of-recovery method, twenty-five percent of a common fund is the benchmark for attorneys' fees awards. *See*, *e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Whether the Court awards the benchmark amount or some other rate, the award must be supported "by findings that take into account all of the circumstances of the

case." *Vizcaino*, 290 F.3d at 1048.

Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941(*citing Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)). "[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quotations omitted). Generally, "the relevant community is the forum in which the district court sits." *Id.* (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)). Typically, "affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases ... are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). "In addition to affidavits from the fee applicant, other evidence of prevailing market rates may include affidavits from other area attorneys or examples of rates awarded to counsel in previous cases." *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 687 (N.D. Cal. 2016).

Although "the choice between lodestar and percentage calculation depends on the circumstances, [ ] either method may [ ] have its place in determining what would be reasonable compensation for creating a common fund." *Six Mexican Workers*, 904 F.2d at 1311 (quotations omitted). To guard against an unreasonable result, the Ninth Circuit has encouraged district courts to cross-check any calculations done in one method against those of another method. *Vizcaino*, 290 F.3d at 1050–51.

### ii. Discussion

Here, Class Counsel's request of $41,666.67 represents one-third of the settlement amount. This is higher than the presumptively reasonable benchmark amount of 25%, but in this case, the Court finds that the higher percentage is reasonable and justified for the following reasons. *See Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003) ("Attorneys' fees provisions included in proposed class action settlement agreements are, like every other aspect of such agreements,

subject to the determination whether the settlement is 'fundamentally fair, adequate, and reasonable.'").

First, the monetary recovery for the class members represents a significant result for the class members. Class Members will receive a substantial amount in settlement funds with no reversion to Defendant. Moreover, no Class Member objected to the settlement and none have requested exclusion, suggesting strong support for the settlement's outcome. Although the requested fee percentage is higher than the benchmark percentage, the actual amount of $41,666.67 is reasonable given that this case involved two separate state court complex employment actions that were then removed by Defendant. The case entailed a moderate degree of motion practice, as well as the investigation, discovery, and mediation necessary to bring this case to settlement. Further, Class Counsel was operating on a contingent-fee basis and advancing all litigation costs and thus at the risk of receiving nothing if the case was unsuccessful. Fees Mot. at 13-14. Class Counsel are experienced in wage-and-hour class actions and performed their work competently. Dkt. No. 61-1 at 2-4, 7-10. The percentage requested is also within the usual range of percentages awarded in similar cases. *See Vedachalam v. Tata Consultancy Servs., Ltd*, No. C 06-0963 CW, 2013 WL 3941319, at *2 (N.D. Cal. July 18, 2013) (noting that "many cases in this circuit that have granted fee awards of 30% or more" and collecting cases with fee awards in the range of 30-33%).

Using the lodestar method to cross-check, the Court notes that Class Counsel's hourly rate of $700 for David Yeremian and $550 for Roman Shkodnik multiplied by the 264 attorney hours billed to date results in approximately $162,750.00 in billable hours. Fees Mot. at 11. The hourly rates are reasonable given Class Counsel's experience. *See* Dkt. No. 61-1 at 2-4, 7-10; Dkt. No. 61-2. Class Counsel has also provided detailed records of the amount of time spent on various litigation and settlement tasks, and the Court finds that the number of hours billed is reasonable. Dkt. No. 61-3; Dkt. No. 61-4. The Court also notes that further hours will be spent in the final settlement and disbursement process. Dkt. No. 61-1 at 10. The requested recovery of $41,666.67 amounts to a negative lodestar multiplier and is reasonable following the lodestar cross-check.

The Court finds that these factors warrant attorneys' fees in the requested amount. In

11

recognition of the favorable settlement, the substantial risks of litigation, and the financial burden assumed, the Court **GRANTS** attorneys' fees of $41,666.67.

### iii.  Costs and Expenses

Class Counsel is entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotations omitted).  Class Counsel seeks reimbursement of actual litigation costs from the common fund and incurred approximately $7,404.96 in costs up to the filing of their motion.  Fees Mot. at 15. Class Counsel submitted a table summarizing the costs and expenses incurred.  *See* Dkt. No. 61-5. These expenses include mediation and travel related fees, as well as filing fees for the complaint and service of process.  *Id.*  At the final approval hearing, Class Counsel confirmed they would not be seeking more than $7,404.96.  The Court is satisfied that these costs were reasonably incurred and **GRANTS** the motion for costs in the amount of $7,404.96.

### iv.  Class Representative Service Award

Class Counsel requests an incentive award of $5,000 for the Named Plaintiff.  "[N]amed plaintiffs. . .are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977; *Rodriguez*, 563 F.3d at 958 ("Incentive awards are fairly typical in class action cases.").  They are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59.  Nevertheless, the Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives . . . ." *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (quotations omitted). This is particularly true where "the proposed service fees greatly exceed the payments to absent class members." *Id.*  The district court must evaluate an incentive award using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, ... [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . ." *Id.* at 977.

Plaintiff requests $5,000 service award.  In wage-and-hour cases, many courts in this

district have held that a $5,000 incentive award is "presumptively reasonable." *See*, *e.g.*, *Harris v. Vector Marketing Corp.*, No. 08-cv-5198-EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (observing that "as a general matter, $5,000 is a reasonable amount"); *Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 362395, at *11 (N.D. Cal. Jan. 29, 2016) (awarding $5,000); *Odrick v. UnionBancal Corp.*, No. C 10-5565 SBA, 2012 WL 6019495, at *7 (N.D. Cal. Dec. 3, 2012) (same). Incentive awards may also be especially appropriate in wage-and-hour class actions, where a named plaintiff undertakes "a significant 'reputational risk' in bringing [an] action against [plaintiff's] former employer." *Covillo v. Specialtys Cafe*, No. C-11-00594 DMR, 2014 WL 954516, at *8 (N.D. Cal. Mar. 6, 2014) (citing *Rodriguez*, 563 F.3d at 958–59).

Following the final approval hearing, the Court directed Plaintiff to submit supplemental briefing detailing the extent of his involvement with the litigation, including tasks performed and an estimate of hours spent. Dkt. No. 65. In his supplemental declaration, Plaintiff provides a summary of the time spent performing various litigation tasks and states that he devoted approximately 45 hours "performing [his] duties on behalf of the Class, including during the initial complaint drafting process, in response to informal discovery before mediation, speaking with Class members and answering questions, in connection with the mediation and ongoing settlement negotiations, and now throughout the preliminary and final Settlement approval process." Dkt. No. 66 ¶ 2. After reviewing Plaintiff's declaration and time summary, and considering the circumstances of this wage-and-hour case and Plaintiff's request for the presumptively reasonable amount, the Court finds that the requested $5,000 service award is reasonable to compensate Plaintiff for his efforts. The Court therefore **GRANTS** the request for an incentive award in the amount of $5,000.

## IV. CONCLUSION

Accordingly, the Court **GRANTS** the motion for final approval of class action settlement and the motion for attorneys' fees and incentive award. The Court approves the settlement amount of $125,000; administrator fees not to exceed $4,999.11; attorneys' fees in the amount of $41,666.67; and costs in the amount of $7,404.96. The Court further awards named Plaintiff an incentive award of $5,000.

13

The parties and settlement administrator are directed to implement this Final Order and the settlement agreement in accordance with the terms of the settlement agreement. The parties are further directed to file a short stipulated final judgment of two pages or less within 14 days from the date of this order. The judgment need not, and should not, repeat the analysis in this order.

**IT IS SO ORDERED.**

Dated: 6/8/2021

HAYWOOD S. GILLIAM, JR.
United States District Judge